# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.P. BATTLE,<br><br>    Plaintiff,<br><br>v.<br><br>DR. MCGANN, et al.,<br><br>    Defendants. | Civil Action<br>No. 17-12041 (RBK-AMD)<br><br>**OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, J.P. Battle, is a federal prisoner currently incarcerated at FCI Fairton, in Fairton, New Jersey. He is proceeding *pro se* with a civil complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* ECF No. 1-3). For the purposes of this opinion, the Court will also consider Plaintiff's "supplemental complaint" (ECF No. 9), along with his initial complaint, as one pleading. For the reasons stated in this Opinion, the Court will dismiss Plaintiff's complaint, declines to exercise supplemental jurisdiction over his claims arising under state law, and denies his motions for a temporary restraining order and preliminary injunction and for appointment of counsel. Additionally, the Court denies Plaintiff's motions for a writ of *mandamus* as moot.

## II. BACKGROUND

The Court will construe the allegations of the complaint as true for the purpose of this Opinion. Plaintiff names the following individuals and entities as Defendants: (1) Dr. McGann, Clinical Medical Director at FCI Fairton; (2) Dr. Peter A. Sarkos, Orthopedic Specialist Contractor for FCI Fairton; and (3) the United States of America. Although vague, the Court will interpret

the complaint as asserting claims against the individual Defendants in both their individual and official capacities.[1]

This case arises from Plaintiff's medical treatment while incarcerated at FCI Fairton, for his shoulder injuries. (ECF No. 1-3). According to the complaint, Plaintiff reported experiencing shoulder pain on June 10, 2016. (*Id*. at 2). Plaintiff received a cortisone injection on June 22, 2016, an x-ray of his right shoulder on June 26, 2016, and a second steroid injection on July 22, 2016. (*Id*.). Nearly eight months later, on June 5, 2017, Dr. Sarkos performed another evaluation, diagnosed Plaintiff with a bilateral partial acute rotator cuff tear, and provided Plaintiff with another cortisone injection. (*Id*.). On July 5, 2017, Plaintiff received another evaluation and complained that the injections did not relieve his pain. (*Id*.). Finally, on August 15, 2017, Dr. McGann provided Plaintiff with another cortisone injection. (*Id*.).

At unspecified times thereafter, Plaintiff "submitted repeated sick-call slip request[s]" and grievances requesting a magnetic resonance imaging scan ("MRI"). (*Id*. at 3). Plaintiff "exhausted all [of] his administrative remedies" (ECF No. 1-3, at 3; ECF No. 9, at 3) and alleges that Dr. Sarkos, his orthopedist, and Dr. McGann, as the final medical decision maker at the prison, denied his requests for an MRI "due to cost." (ECF No. 1-3, at 3). Plaintiff also implies that the refusal to provide him with an MRI is due to "racial discrimination and prejudice," alleging that white inmates at FCI Fairton, with similar injuries, "were taken to area hospitals." (ECF No. 9, at 3).

Plaintiff contends that Drs. Sarkos and McGann have misdiagnosed him and that his shoulder injury is getting worse and risks permanent disability. (*Id*.). Plaintiff now raises Eighth

---

[1] In his description of the parties, Plaintiff specifies that he is suing Dr. McGann in her official capacity but does not specify as to Dr. Sarkos. Plaintiff then states, a few lines later, that he is suing all defendants, which appears to include the United States, in both capacities. (ECF No. 1-3, at 2).

Amendment deliberate indifference claims against the Defendants, alleging that the Defendants refused to perform an MRI, and as a result, have not properly treated his rotator cuff injury. Additionally, Plaintiff raises state law claims for ordinary negligence and medical malpractice. Plaintiff also seeks a temporary restraining order and preliminary injunction to order Defendants to provide him with an MRI and proper treatment.

### III. STANDARD OF REVIEW

**A. Standard for *Sua Sponte* Dismissal**

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 Fed. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**B. Bivens Actions**

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855. As is relevant in the present case, the Supreme Court has recognized an implied cause of action for Eighth Amendment inadequate medical care claims against a federal actor who is personally involved in the deprivation. *Carlson*, 446 U.S. at 19.

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right

4

was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

## IV. DISCUSSION

### A. Sovereign Immunity

Plaintiff asserts claims against the United States and Drs. McGann and Sarkos in both their official and individual capacities. To be liable under *Bivens*, a defendant must be a "person." The Third Circuit held in *Jaffee v. United States*, 592 F.2d 712, 717–18 (3d Cir. 1979), that sovereign immunity bars *Bivens* claims against the United States and its agents unless the United States explicitly waives its immunity, and accordingly, they are not "persons" amenable to suit under *Bivens*. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver.").

Here, the United States is immune from suit under *Bivens* because it has not explicitly waived sovereign immunity. Additionally, Dr. McGann is an employee of FCI Fairton or the Bureau of Prisons, or both, which are federal entities and therefore, Dr. McGann is also immune from suit under *Bivens*, at least in her official capacity. *See Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007) (affirming the dismissal of a *Bivens* claim against the United States, BOP, and seven named individuals in their official capacities). Assuming *arguendo* that Dr. Sarkos has an official capacity,[3] in that he is acting on behalf of the federal entities above, he is also immune

---

[3] Plaintiff alleges that Dr. Sarkos is a "contractual vendor" and acts as FCI Fairton's orthopedic specialist. (ECF No. 1-3, at 2). Consequently, it is possible that Dr. Sarkos is a contractor rather than an employee or agent of a federal agency. In any event, the Court would conclude that the United States is also immune under that scenario, because "the United States may not be held vicariously liable for . . . an independent contractor." *Gibson v. United States*, 567 F.2d 1237, 1242 (3d Cir. 1977) (citing 28 U.S.C. § 2671).

from suit for the same reasons as Dr. McGann. Accordingly, the Court will dismiss with prejudice the claims against the United States and Drs. McGann and Sarkos in their official capacities.

## B. Eighth Amendment Claims

Having determined that Plaintiff cannot sue Drs. McGann and Sarkos in their official capacities, the Court must still decide whether Plaintiff may proceed against Drs. McGann and Sarkos in their individual capacities. Plaintiff contends that the Doctors' refusal to schedule an MRI and decision to conservatively treat his torn rotator cuff without an MRI for twelve months, "constituted deliberate indifference in violation of the Eighth Amendment." (ECF No. 1-3, at 4).

To establish a claim for an Eighth Amendment violation of the right to adequate medical care or for failure to protect, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197. The Third Circuit has also found deliberate indifference "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012). But it "is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute" deliberate indifference. *Id.*

Courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

With respect to Drs. McGann and Sarkos,[4] Plaintiff admits that the doctors evaluated his injured shoulder on a number of occasions and then, from June 22, 2016, through August 15, 2017, received at least four cortisone and other steroid injections. (ECF No. 1-3, 2–3; ECF No. 9, at 2). Although Plaintiff received an x-ray evaluation on June 26, 2016, he takes issue with his "conservative treatment," arguing that it was not effective and that it was negligent to treat him conservatively without first performing an MRI. (ECF No. 9, at 2).

Plaintiff's disagreement with Drs. McGann and Sarkos as to the proper course of treatment and whether to schedule an MRI do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (stating that allegations of negligent diagnosing and treatment, and mere disagreement as to proper medical treatment do not raise a constitutional claim); *Smith v. O'Boyle*, 251 Fed. App'x 87, 90 (3d Cir. 2007) (affirming dismissal of a complaint, "[b]ecause a disagreement as to the proper medical treatment for a prisoner is insufficient to establish an Eighth Amendment violation").

---

[4] Plaintiff contends that Doctors McGann and Sarkos were responsible for his medical care, but only occasionally identifies which of the two performed his treatments and evaluations. Consequently, the Court will construe Plaintiff's allegations liberally, as if the ambiguous allegations applied to either doctor.

In light of Plaintiff's multiple treatments and evaluations, it is apparent that the complaint shows only a difference in opinion over the course of proper medical treatment, rather than a complete denial of medical care. *Rhines v. Bledsoe*, 388 F. App'x 225, 227 (3d Cir. 2010) (holding that a disagreement over whether prison staff should have "immediately ordered" an MRI did not constitute deliberate indifference). The Third Circuit has held that when a "prisoner has received some medical attention and the dispute is over the adequacy of treatment" courts should not "second guess medical judgments and . . . constitutionalize claims which sound in state tort law." *U. S. ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979).

The question of whether "additional diagnostic techniques or forms of treatment . . . [are necessary] is a classic example of a matter for medical judgment . . . and does not represent cruel and unusual punishment" under the Eighth Amendment. *McCluskey*, 505 F. App'x at 203 (internal quotation marks omitted). Consequently, at most, Plaintiff's allegations that he should have received an MRI, i.e., an "additional diagnostic technique[]," and other forms of treatment only rise to the level of medical malpractice, which is insufficient to state an Eighth Amendment claim. *See id.*; *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a constitutional violation."). Accordingly, the Court will dismiss without prejudice the federal claims against Drs. McGann and Sarkos, in their individual capacity.

Plaintiff does raise ordinary medical malpractice and negligence claims against the Defendants (ECF No. 1-3, at 4), but since there are no remaining federal claims against any of the Defendants, any potential basis for this Court to consider Plaintiff's state law claims lies within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. However, when a court has dismissed all claims over which it had federal question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See id.* at § 1367(c)(3).

As the Court will dismiss Plaintiff's federal claims for failure to state a claim upon which relief may be granted, the Court will exercise is discretion to decline supplemental jurisdiction over Plaintiff's state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

As a result, with no active claims, Plaintiff cannot demonstrate that he is likely to prevail on the merits. Accordingly, the Court also denies his motion for a temporary restraining order and preliminary injunction. *See, e.g., Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (holding that in deciding motion for preliminary injunction, a district court must first determine whether movant has shown reasonable probability of success on the merits); *Fink v. Supreme Court of Pennsylvania*, 646 F. Supp. 569, 570 (M.D. Pa. 1986) (stating that preliminary injunctions and temporary restraining orders have the same requirements).

Plaintiff has also filed a motion requesting the appointment of pro bono counsel. (*See* ECF No. 11). He requests the appointment of counsel due to the "legal complexities" of this case and his status as an inmate. (*See id.* at 2). Our jurisprudence provides the Court with broad discretion in determining whether to request representation for an indigent civil litigant notwithstanding the fact that indigent civil litigants "have no statutory right to appointed counsel." *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993), *cert. denied,* 510 U.S. 1196 (1994). In evaluating a motion seeking appointment of counsel, the court must preliminarily determine whether the plaintiff's claims have arguable merit. *Id.* at 155.

If the court finds that the plaintiff's claims have merit, the court should consider the following non-exclusive factors: 1) The plaintiff's ability to present his or her own case; 2) The complexity of the legal issues; 3) The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; 4) The amount a case is likely to turn on credibility determinations; 5) Whether the case will require the testimony of expert witnesses; and

6) Whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155–57. As discussed above, Plaintiff's complaint does not state any federal claims demonstrating entitlement to relief, and the Court declines to exercise supplemental jurisdiction. As such, the Court must deny his motion for the appointment of pro bono counsel.

Finally, Plaintiff filed two motions for a writ of mandamus (ECF Nos. 12, 14), seeking to accelerate a decision on his motion for appointment of counsel (ECF No. 11) and whether the Court would *re-open* and allow his case to proceed. Because the Court will dismiss his federal claims, decline to exercise supplemental jurisdiction, and deny Plaintiff's motion for appointment of counsel, the Court denies his motions for a writ of mandamus as moot.

## V. CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiff's complaint, declines to exercise supplemental jurisdiction over his claims arising under state law, and denies his motions for a temporary restraining order and preliminary injunction and for appointment of counsel. Accordingly, the Court also denies Plaintiff's motions for a writ of mandamus as moot. The Court shall give Plaintiff thirty days to file an amended complaint to cure the deficiencies discussed above. An appropriate Order follows.

Dated: October 17, 2018

                                                                 s/Robert B. Kugler
                                                                 ROBERT B. KUGLER
                                                                 United States District Judge